Marie HOOVER, Appellant,

v.

Lee M. LARKIN and Fouts &
Moore, LLP, Appellees.

No. 01–05–00191–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 27, 2006.

Wayne H. Paris, Gillis, Paris & Heinrich, P.L.L.C., Houston, TX, for Appellant.

D. Wayne Clawater, Cruse, Scott, Henderson & Allen, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices TAFT, HIGLEY, and BLAND.

## OPINION

JANE BLAND, Justice.

Marie Hoover appeals a no-evidence summary judgment rendered on behalf of Lee M. Larkin and Fouts & Moore, LLP (collectively "Larkin") in her suit for legal malpractice, breach of fiduciary duty, and deceptive trade practices resulting from Larkin's alleged mishandling of a settlement in an underlying case. We conclude that the trial court's summary judgment was proper because Hoover provides no evidence of causation on any of her causes of action. We therefore affirm.

### Background

In 1993, Hoover hired Larkin to represent her in a suit against her brother-in-

law for his alleged mishandling of funds as the executor of his mother's estate. In January 1997, the day before the case was to proceed to trial, Hoover offered to settle her claims against her brother-in-law for a net amount of $20,000, consisting of a certificate of deposit worth $13,500, her brother-in-law's one-half interest in a note (the "Japhet note") worth $6,000, and attorney's fees in the amount of $500. He refused the offer, but after a half day of trial, the trial judge urged the parties to again attempt a settlement. Hoover alleges that during the lunch break, Larkin approached her twice, once asking her if she would settle for $20,000, which she accepted, and once asking if she would settle for $19,500, which she refused. Hoover claims that Larkin read her the settlement numbers during this exchange, but she did not hear them because he spoke too softly. After lunch, Larkin told Hoover her brother-in-law had agreed to a settlement of $20,000, which Hoover believed reflected the same settlement terms she had offered her brother-in-law the day before.

With Hoover present, Larkin read the terms of the settlement in open court as follows:

> [T]he Japhet note will be assigned to Mrs. Hoover, ... which is approximately $12,500, to use round numbers, approximately $12,237.24. In addition to that, Mr. Dick Hoover will pay a sum of $7,763.76 so that—in other words, a total of $20,000, your honor....

The trial court then reiterated the terms of the agreement and asked for each party's approval. When the court asked Hoover if those were the terms of her agreement, she first replied that she was distracted, but when asked again "[i]s that your agreement as we just stated," she replied that it was.

Hoover later rejected the terms of the settlement after she reviewed the settlement documents, and thus refused to sign them. Hoover contends she did not agree to settle for a gross amount of $20,000, consisting of the entire Japhet note, in which she already possessed a 50% interest, and approximately $7,500 cash. When Hoover informed Larkin that she was not satisfied with the terms, he apologized to her, and sought to obtain from Hoover's brother-in-law the original settlement offer, consisting of the entire Japhet note plus approximately $14,000 in additional payments. Hoover's brother-in-law once again rejected that settlement amount. Larkin withdrew from his representation of Hoover. Hoover later elected to accept the terms of the settlement rather than have her case dismissed for want of prosecution, and the trial court enforced the settlement agreement with terms as dictated into the record and agreed to by Hoover.

In November 1998, Hoover sued Larkin for legal malpractice, breach of fiduciary duty, and deceptive trade practices for failing to explain that the terms of the settlement agreement her brother-in-law accepted reflected a gross amount of $20,000, and not a net amount of $20,000. Larkin moved for traditional summary judgment, which the trial court granted.

Hoover appealed the summary judgment to the Fourteenth Court of Appeals. Our sister court held that summary judgment was proper on Hoover's claim for breach of fiduciary duty because the alleged misconduct was not "clear and serious" as required to recover for fee forfeiture under *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999). *Hoover v. Larkin*, No. 14–00–00427–CV, 2001 WL 1046266, at *7 (Tex. App.-Houston [14th Dist.] Sept. 13, 2001, pet. denied) (not designated for publication). A plurality of the court held that

summary judgment was improper as to Hoover's remaining claims, reversing the judgment as to Hoover's legal malpractice and DTPA claims. *Id.* at *10. One member of the court held that Larkin failed to establish he was entitled to a traditional summary judgment because (1) Larkin's affidavit, which failed to identify the applicable standard of care, was insufficient to support summary judgment on whether Larkin breached a duty to Hoover, (2) any negligence on Hoover's part in failing to pay attention to the terms of the settlement was insufficient to break the causal connection between the alleged breach of duty and damages, or to absolve Larkin of responsibility for any negligent conduct, (3) the professional services exemption did not apply to Hoover's DTPA claims, and (4) Larkin failed to prove as a matter of law the elements of judicial estoppel, collateral estoppel, and res judicata. *Id.* at *3–10. Another member of the court concurred in the result, stating that because a reasonable fact-finder could reach differing conclusions as to whether Larkin exercised reasonable care under the circumstances, summary judgment was improper. *Id.* at *10. The third justice of the panel concurred in affirming the summary judgment on Hoover's breach of fiduciary duty claim, but dissented as to reversal of the trial court's summary judgment on the other claims because the summary judgment evidence demonstrated that "Hoover was fully informed of the terms of the settlement before it became enforceable." *Id.* at *14. The court remanded Hoover's legal malpractice and DTPA claims to the trial court for further proceedings.

Upon remand, Larkin filed a no-evidence motion for summary judgment, contending this time that Hoover had presented no evidence of causation. Specifically, Larkin argued that Hoover presented no evidence that her brother-in-law would have accepted a different settlement, or

that Hoover would have been successful had her case proceeded to trial. Larkin also argued that because the Fourteenth Court of Appeals already has concluded that Hoover is not entitled to fee forfeiture under her breach of fiduciary duty claim, any remaining breach of fiduciary duty claim is an improper recasting of her legal malpractice claim. The trial court granted summary judgment, from which Hoover appeals.

### Standard of Review

■ We review the trial court's ruling on a motion for summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). We view the evidence in a light most favorable to the non-movant, making all reasonable inferences and resolving all doubts in the non-movant's favor. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). Because the summary judgment order does not specify the ground or grounds on which the trial court relied for its ruling, we affirm it if any ground raised in Larkin's motion is meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex.2000).

In a no-evidence summary judgment, the movant represents that no evidence exists as to one or more essential elements of the non-movant's claims, upon which the non-movant would have the burden of proof at trial. Tex.R. Civ. P. 166a(i); *Flameout Design Fabrication Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.Houston [1st Dist.] 1999, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the non-movant to raise a fact issue on the challenged elements. Tex.R. Civ. P. 166a(i). On review, we ascertain whether the non-movant produced more than a scintilla of probative evidence to raise a genuine issue of material fact.

*Id.* More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). If the evidence does no more than create a mere surmise or suspicion of fact, less than a scintilla of evidence exists. *Id.* Although the non-moving party is not required to marshal its proof, it must present evidence that raises a genuine fact issue on each of the challenged elements. Tex.R. Civ. P. 166a(i).

## Discussion

Larkin contends that Hoover presents no evidence of causation. Specifically, Larkin contends that Hoover failed to present evidence either that her brother-in-law would have accepted her original settlement offer, or that she would have been successful had her case proceeded to trial.

Hoover responds that Larkin's summary judgment motion only addresses damages consisting of the difference between the actual settlement and the settlement she believed she would receive, but fails to challenge her independent claim that Larkin's actions caused her damages in the form of lost attorney's fees paid to Larkin. Hoover does not contend that summary judgment was improper as to her claim for damages for the former; rather, Hoover contends that summary judgment should not have been granted against her claims for attorney's fees as actual damages.

Larkin moved for a no-evidence summary judgment on the basis that Hoover "has no evidence of causation. Causation is an essential element of each of her purported causes of action." Larkin thus properly pointed out the element of Hoover's claim for which he contends there is no evidence: causation. We conclude that

Larkin sufficiently raised causation as a basis for summary judgment.

### A. Legal Malpractice

To prevail on a legal malpractice claim, a plaintiff must show that "(1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Alexander v. Turtur & Assocs., Inc.,* 146 S.W.3d 113, 117 (Tex.2004); *Greathouse v. McConnell,* 982 S.W.2d 165, 172 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). If a legal malpractice case arises from prior litigation, a plaintiff must prove that, but for the attorney's breach of his duty, the plaintiff would have prevailed in the underlying case. *Greathouse,* 982 S.W.2d at 172. Cases often refer to this causation aspect of the plaintiff's burden as the "suit-within-a-suit" requirement. *See id.* at 173. In general, one proves causation in a legal malpractice suit by expert testimony. *See Alexander,* 146 S.W.3d at 119–20. Neither of Hoover's experts presented affidavits supporting suit-within-a-suit causation. Hoover presented no evidence to demonstrate that she would have been successful in her underlying suit, or that her brother-in-law would have agreed to the settlement she wanted to achieve. Hoover claims that the suit-within-a-suit causation requirement does not apply to her claim for attorney's fees.

We do not agree that a legal malpractice claim for attorney's fees does not require expert evidence of causation. A plaintiff in a legal malpractice case must demonstrate that any alleged damages, including attorney's fees, were proximately caused by the breach of a duty by the defendant. *See Judwin Props., Inc. v. Griggs & Harrison,* 911 S.W.2d 498, 507 (Tex.App.-Houston [1st Dist.] 1995, no writ). Thus, to survive a no-evidence mo-

tion for summary judgment, Hoover must present evidence raising a fact issue as to whether her attorney's breach of a duty caused damages in the form of attorney's fees. Though Hoover presented the affidavits of two experts, neither affidavit avers that Hoover could have succeeded in her suit or in achieving the larger settlement but for her attorney's alleged negligence; nor does either affidavit refer to any attorney's fees incurred as damages. Without such evidence, Hoover fails to raise a fact issue that Larkin's negligence caused her to incur attorney's fees as a result of Larkin's alleged malpractice. Because Hoover failed to raise a fact issue as to whether Larkin's breach of a duty caused Hoover damages in the form of attorney's fees paid to Larkin, the trial court properly granted summary judgment on Hoover's legal malpractice claim.

### B. DTPA

As with Hoover's negligence claim, the DTPA requires that a plaintiff prove that "but for" the attorney's breach of duty, the plaintiff would not have sustained injury. *See* TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon Supp.2005); *see also Alexander*, 146 S.W.3d at 117 (stating that producing cause under DTPA requires proof of causation in fact); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 481 (Tex.1995) (providing that producing cause is substantial factor which brings about injury and without which injury would not have occurred). Thus, a plaintiff must prove that a violation of the statute is a producing cause of the injury. *Alexander*, 146 S.W.3d at 117. "While different, both producing cause and proximate cause require proof of causation in fact." *Id.* A plaintiff may recover all damages, including attorney's fees, that are the result of the defendant's wrongful acts; but the burden remains on the plaintiff to demonstrate such causation. *See Stan-*

*dard Fire Ins. Co. v. Stephenson*, 963 S.W.2d 81, 90 (Tex.App.Beaumont 1997, no pet.) ("[S]uch fees may be recoverable where the natural and proximate results and consequences of prior wrongful acts have been to involve a plaintiff in litigation with and against third parties and other parties."). Here, Hoover had the burden to present evidence that she incurred attorney's fees as a consequence of Larkin's wrongful conduct. She presents no evidence to demonstrate that if not for Larkin's alleged misrepresentation of the terms of the settlement, she would not have incurred the fees she paid him, or that she would have recovered those fees as part of a successful DTPA claim against Larkin. Because Hoover failed to provide evidence that Larkin's wrongful conduct caused her to incur, or fail to recover, the attorney's fees she paid him, summary judgment was proper as to her claim under section 17.50(a) of the DTPA.

Hoover also contends that the trial court granted more relief than requested because Larkin's summary judgment motion failed to address her request for an order restoring attorney's fees under section 17.50(b)(3) of the DTPA. *See* TEX. BUS. & COM.CODE ANN. § 17.50(b)(3). Such an order, however, can only be granted in cases where a plaintiff prevails under subsection (a). *Id.* Larkin's summary judgment motion claimed Hoover presented no evidence that any violation of the DTPA by Larkin caused Hoover any damages. Proof of causation is required to recover under section 17.50(a) of the DTPA. *See id.* § 17.50(a); *see also Alexander*, 146 S.W.3d at 117 (stating that producing cause under DTPA requires proof of causation in fact). Thus, Larkin's no-evidence challenge to Hoover's DTPA claim generally suffices as a challenge to her request for an order restoring fees. Because Hoover failed to raise a fact issue concerning causation un-

der section 17.50(a), she is not entitled to an order restoring fees under section 17.50(b).

### C. Remaining Breach of Fiduciary Duty Claim

 Hoover's attempt to recover attorney's fees under her breach of fiduciary duty claim is foreclosed by the Fourteenth Court's holding in her previous appeal. An attorney who commits a clear and serious breach of his fiduciary duty to his client may be required to forfeit some or all of his fees. *See Burrow v. Arce,* 997 S.W.2d 229, 241 (Tex.1999). Fee forfeiture is an equitable remedy whose primary purpose is not to compensate the injured client, but to protect the relationship of trust between attorney and client by discouraging attorney disloyalty. *Miller v. Kennedy & Minshew, Prof'l Corp.,* 142 S.W.3d 325, 338 (Tex.App.-Fort Worth 2003, pet. denied). Hoover does not cite to any cases classifying attorney's fees paid to the malfeasant attorney as actual damages under a breach of fiduciary duty claim separate from the equitable remedy of fee forfeiture. To the contrary, courts distinguish between actual damages incurred as a result of the breach, and the equitable remedy of fee forfeiture. *See Burrow,* 997 S.W.2d at 240 (holding claimant need not prove actual damages to succeed in claim for fee forfeiture). Because our sister court already has held that summary judgment was appropriate on Hoover's fee forfeiture claim, Hoover is not entitled to equitable disgorgement of attorney's fees for breach of a fiduciary duty. To the extent she seeks attorney's fees as actual damages, Hoover's lack of causation evidence defeats her. *See Home Loan Corp. v. Tex. Am. Title Co.,* 191 S.W.3d 728, 735 n.22 (Tex.App.—Houston [14th Dist.] 2006, no pet. h.) (stating that because plaintiff sought actual damages, rather than fee forfeiture, lack of causation

was dispositive). Because we conclude that Hoover has failed to prove causation, the trial court properly granted summary judgment.

### Conclusion

We hold the trial court properly granted summary judgment on each of Hoover's causes of action because Hoover failed to raise a fact issue concerning causation. Accordingly, we affirm the judgment of the trial court.