# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00603-CV

**Marina Luise Bird, Appellant**

**v.**

**Terence Patrick O'Donnell, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. FM105725, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this case, we are asked to determine whether the trial court erred in refusing to order appellee Terence Patrick O'Donnell to reimburse his ex-wife, appellant Marina Luise Bird, for insurance premiums paid to provide medical insurance for their two sons and in ordering Bird to pay O'Donnell $10,000 in attorney's fees. We affirm the trial court's order.

### Factual and Procedural Background

Bird and O'Donnell were divorced in September 1999. Under the original decree, O'Donnell was to provide "medical support" for their two sons.[1] O'Donnell insured his sons through

---

[1] At the time the decree was entered, the children were insured through O'Donnell's employer, and the decree provided that if O'Donnell left his employment and insurance was available through Bird, O'Donnell was to reimburse Bird for "the cost of the converted policy." "Accompanying the first such written notification and any subsequent notifications informing of a change in the premium amount, [Bird] is ORDERED to provide [O'Donnell] with documentation from the carrier of the cost to [Bird] of providing coverage for the children."

his employer, but in February or March 2001, O'Donnell lost his job and asked Bird to insure the boys through her husband's work until O'Donnell found new employment. Bird agreed, and the boys were transferred to Mr. Bird's insurance in early April 2001. In May 2001, Bird filed a petition to modify the parent-child relationship, seeking a temporary restraining order against O'Donnell and asking to have the summer visitation schedule changed because she and her husband had non-refundable tickets to take the family to Germany. During that lawsuit, the parties mediated an agreement under which O'Donnell's child support obligation was reduced and a modified visitation schedule was entered to accommodate the trip to Germany. The issue of insurance was not raised.

In September 2002, O'Donnell found a new job and indicated that he wanted to provide the children's insurance, but he did not act to insure the children during the first month of his employment. After open enrollment ended, he and the Birds decided to leave the children on Mr. Bird's insurance.[2] In November 2002, Bird sent O'Donnell a letter proposing that the boys would remain on Mr. Bird's insurance and that O'Donnell would pay the Birds for the cost of the boys' insurance in the future.[3] The letter also states that O'Donnell agreed to reimburse the Birds for the insurance they provided for the boys between April 2001 and November 2002. O'Donnell responded

---

[2] Slightly more than one month after starting his new job, O'Donnell tried to add the boys to his insurance, but was told he needed a letter stating that the boys had been removed from the Birds' policy. The Birds have a total of five children, and Bird testified that she preferred to keep the boys on her husband's insurance for stability and because it is easier for her to manage the insurance issues of all of the children when they are all covered on the same policy.

[3] The letter recites that parties agreed that the boys would remain on the Birds' insurance and that O'Donnell had agreed to reimburse the Birds for insurance premiums, but it does not state when that agreement was reached or the terms of the reimbursement agreement.

2

by letter, thanking the Birds for covering the boys while he was unemployed and stating, "My intent is to reimburse you for incremental costs that you incurred while covering the children during my period of unemployment." O'Donnell asked the Birds to "document the difference between what you paid for premiums prior to insuring" the children and "the premiums after you began covering them," and said he would pay "100% of that incremental change for the entire time that they have been under your plan." O'Donnell testified that he never received documentation of a change in the premiums and never reimbursed the Birds for past insurance premiums.

In May 2003, Bird filed another petition to modify, seeking to have O'Donnell's visitation supervised and restricted.[4] In October 2003, the parties attended mediation, and O'Donnell agreed to pay $828 a month in child support, plus $140 a month for insurance premiums. However, a dispute remained as to whether O'Donnell should reimburse Bird for the insurance she and her husband provided for the boys while O'Donnell was unemployed. In April 2004, Bird amended her petition, dropping the request for supervised visitation and asking that an order be entered incorporating the terms of the mediation agreement. Bird also asked that O'Donnell be ordered to reimburse her for premiums she and her husband had paid since O'Donnell was laid off, requesting twenty months at $140 a month, totaling $2,800. The trial court held a hearing, during which Mr. Bird's benefits administrator testified that the premiums paid by the Birds did not increase with the addition of the two boys. Instead, the Birds paid a set amount to cover Mr. Bird, an additional set

---

[4] Bird sought these restrictions because she alleged that their oldest son had been having emotional difficulties related to revelations about his father's sexual orientation.

amount to cover Bird, and a third set amount to cover any or all of their children. The Birds did not incur any increased out-of-pocket costs to insure the boys.

After the hearing, the trial court entered an order modifying the original decree pursuant to the mediation agreement. The trial court ruled that O'Donnell was not required to reimburse Bird for the past insurance premiums and awarded him $10,000 in attorney's fees incurred since June 2003. Bird appeals, arguing that the trial court erred in determining that O'Donnell was not obligated to repay Bird for the insurance premiums and in awarding O'Donnell attorney's fees.

**Reimbursement for Insurance Premiums**

Bird argues that the trial court abused its discretion in refusing to order O'Donnell to reimburse her for the twenty months following O'Donnell's loss of employment during which the children were insured by the Birds. We disagree.

The family code requires a trial court to provide for medical support in an order regarding a child's care. Tex. Fam. Code Ann. § 154.181(a) (West Supp. 2005). The court must consider the insurance coverages available to the parties and give priority to coverage through an employer. *Id*. § 154.182(a) (West Supp. 2005). If insurance is available through the obligor's employment, the trial court shall order the obligor to obtain such insurance. *Id*. § 154.182(b)(1). If insurance is not available through the obligor's employment and is available through the obligee's employment, the trial court may order the obligee to provide insurance and, if so, shall order the obligor to pay additional child support to pay the obligee "for the actual cost of the health insurance for the child." *Id*. § 154.182(b)(2). Once a child-support order has been entered, a trial court may

4

modify the order if the parents' or child's circumstances have materially and substantially changed. *Id*. § 156.401(a)(1) (West Supp. 2005). We review a trial court's determinations on a motion to modify for an abuse of discretion. *Gonzalez v. Tippit*, 167 S.W.3d 536, 544 (Tex. App.—Austin 2005, no pet.); *Hollifield v. Hollifield*, 925 S.W.2d 153, 155 (Tex. App.—Austin 1996, no writ).

Bird argues that she is entitled to reimbursement because "from April 1, 2001 until November 1, 2003—a period of 31 months—[O'Donnell] paid no health insurance premiums for the parties['] children." However, neither did the Birds pay premiums separate and above what they were already paying for their other children. The Birds' insurance premiums did not increase when the boys were added to Mr. Bird's insurance and the Birds did not suffer any incremental out-of-pocket costs by adding the two O'Donnell children. The parties testified that reimbursement was not discussed until the boys had been insured by the Birds for more than a year. When it was discussed, O'Donnell asked for documentation showing the incremental increase in premiums due to his sons being added to the Bird family's insurance policy. The Birds did not produce documentation, instead asking for one-half of the premium they paid for their dependents' insurance, a premium that did not increase when the O'Donnell boys were added.

Bird argues that because the original decree ordered O'Donnell to provide medical support, his failure to contribute to the Bird family's insurance premiums was a violation of his obligation to provide child support. We disagree. If insurance was no longer available to O'Donnell and was available to Bird, the children were to be transferred to Bird's insurer and O'Donnell was to pay any cost incurred by the transfer. However, due to the structure of Mr. Bird's insurance, there was no cost associated with the conversion of the policy. Based on this record, we cannot hold that

5

the trial court abused its discretion in refusing to order reimbursement for insurance provided by the Birds while O'Donnell was unemployed. *See* Tex. Fam. Code Ann. § 154.182(b)(2).[5]

## Award of Attorney's Fees

Bird next argues the trial court erred in awarding O'Donnell attorney's fees, asserting that his failure to pay for insurance amounted to a failure to pay child support and that she is therefore entitled to attorney's fees under section 157.167 of the family code. Again, we disagree.

A trial court may award reasonable attorney's fees in a suit affecting a parent-child relationship. Tex. Fam. Code Ann. § 106.002(a) (West Supp. 2005). Such an award is reviewed for an abuse of discretion. *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996); *Finley v. May*, 154 S.W.3d 196, 198-99 (Tex. App.—Austin 2004, no pet.). Under section 157.167, if a party in an enforcement action is found to have failed to make child support payments, the trial court must order the delinquent party to pay the other party's reasonable attorney's fees. Tex. Fam. Code Ann. § 157.167(a) (West Supp. 2005).

Bird filed this suit for modification in May 2003, seeking to have O'Donnell's visitation with his sons supervised and restricted and seeking a temporary restraining order against

---

[5]  Bird cites to cases holding that a trial court does not abuse its discretion in ordering a parent to reimburse the other parent for insurance premiums even though the premium does not vary depending on how many children are covered. *See*, *e.g.*, *Peterson v. Kirk*, 03-02-00202-CV, 2002 Tex. App. LEXIS 8948, at *14 (Tex. App.—Austin Dec. 19, 2002, pet. denied) (not designated for publication); *Roberts v. Roberts*, No. 03-99-00296-CV, 2000 Tex. App. LEXIS 475, at *5 (Tex. App.—Austin Jan. 21, 2000, no pet.) (not designated for publication); *In re Marriage of Vogel*, 885 S.W.2d 648, 653 (Tex. App.—Amarillo 1994, writ denied). However, those cases do not require a holding that the court's decision *not* to order reimbursement *was* an abuse of discretion, and Bird has not cited any cases that so hold.

him. Bird later dropped those requests and proceeded to seek only $2,800 in reimbursement for health insurance. O'Donnell's attorney testified that O'Donnell had incurred almost $14,000 in attorney's fees since May 2001, when Bird filed her first modification proceeding related to her family's planned trip to Germany. O'Donnell's attorney testified that O'Donnell incurred about $2,000 in fees in that first proceeding. O'Donnell incurred another $2,000 in fees in a second proceeding brought by Bird "seeking to exclude Mr. O'Donnell from possession of his sons," in which O'Donnell "successfully defeat[ed] a temporary restraining order."[6] Finally, the attorney testified that O'Donnell incurred almost $11,000 in attorney's fees between June 2003 and May 2004, litigating the insurance and reimbursement issues. O'Donnell's attorney observed that Bird seemed to have a habit of filing suit against O'Donnell any time the parties could not reach a quick agreement about an issue of concern to Bird. He asked that she be required to pay O'Donnell's attorney's fees to discourage such behavior.

In handing down its decision, the court stated that the Birds' request for reimbursement "was staggering" and made "absolutely not one ounce of legal nor financial sense." The trial court stated that Bird's first suit concerned a "legitimate dispute" but should have been resolved without a lawsuit, that the next suit "also was ridiculous, but the parties settled that

---

[6] There is some confusion as to whether Bird had filed two or three suits to modify. O'Donnell's attorney testified without objection that Bird had filed three suits and asked Bird on cross-examination about her filing of three suits. However, on appeal, Bird states that there were only two suits filed—one in May 2001 and one in May 2003. It appears that in mentioning a second lawsuit, which he stated was filed in May 2002, O'Donnell's attorney may have been referring to Bird's initial pleadings in her most recent suit, filed May 2003, in which she sought restricted and supervised visitation and a temporary restraining order. In April 2004, Bird amended her petition to drop the visitation issues.

agreement," and that the most recent suit "is just beyond the pale." The trial court awarded O'Donnell $10,000 in attorney's fees for the period between June 2003 and May 2004.

Bird initially sought a temporary restraining order and a modification to limit O'Donnell's visitation with his sons. She then amended her petition, asking that O'Donnell be ordered to reimburse her for twenty months of insurance premiums paid to cover their children. We have held that the trial court did not abuse its discretion in determining that Bird was not entitled to reimbursement. O'Donnell's failure to pay a portion of the Birds' insurance premiums did not violate the divorce decree and did not amount to a failure to pay child support. Therefore, Bird was not entitled to attorney's fees under section 157.167 of the family code. *See* Tex. Fam. Code Ann. § 157.167. Based on this record, the trial court did not err in awarding O'Donnell attorney's fees incurred in opposing her claims.

## Conclusion

Having held that the trial court did not abuse its discretion in refusing to order O'Donnell to reimburse the Birds for past insurance premiums or in ordering Bird to pay O'Donnell $10,000 in attorney's fees, we affirm the court's order.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: February 17, 2006

8